IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

UNITED STATES OF AMERICA
ex rel. NADRA LEE WOODS                                      PLAINTIFF

v.                              No. 03-3086

NORTH ARKANSAS REGIONAL
MEDICAL CENTER and
DR. HELEN H. KIM                                             DEFENDANTS

**O R D E R**

Now on this 7th day of September, 2006, comes on to be considered defendants' **Motions to Dismiss (Docs. 42, 44).** The Court, being well and sufficiently advised, finds that the motions should be **GRANTED**. The Court finds and orders as follows with respect thereto:

**Background**

1. Plaintiff instituted this *qui tam* action on October 29, 2003, against the North Arkansas Regional Medical Center and Dr. Helen H. Kim, alleging violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733.

2. The Court granted the United States three extensions of time, setting a deadline of July 3, 2004, in which the United States could elect to intervene in the action. (Doc. 12.) On July 1, 2004, the United States filed a notice stating that it had not completed its investigation by the Court's stated deadline and that

-1-

it therefore was not intervening at that time, but that its investigation was ongoing. (Doc. 13.)

3. Defendants thereafter moved to dismiss plaintiff's complaint, arguing, inter alia, that plaintiff had not pled her FCA claims with the particularity required by Federal Rule of Civil Procedure 9(b). (Docs. 19, 21.) The Court denied the motions to dismiss and granted plaintiff leave to amend to cure the alleged deficiencies pointed out by defendants. (Doc. 34.)

4. Plaintiff filed an amended complaint on October 14, 2005, alleging the following:

\*   From 1992 to 2002, plaintiff was the Director of Radiation Oncology at the Claude Parrish Radiation Therapy Institute ("the Institute") of the North Arkansas Regional Medical Center ("NARMC") in Harrison, Arkansas.

\*   NARMC is a non-profit corporation that controls and operates the Institute.

\*   Pursuant to a written agreement with NARMC, Dr. Kim moved her practice into the Institute. "From 1990 to at least 2002," NARMC provided Dr. Kim with office space, services of NARMC staff, furniture and equipment, etc. According to plaintiff, NARMC provided these goods and services to Dr. Kim for "less than fair market value" in exchange for Dr. Kim referring patients to NARMC "for treatment, including but not limited to inpatient and

outpatient hospital services, surgery, radiation therapy and chemotherapy." (Doc. 38 ¶ ¶ 15, 16.)

\* Plaintiff asserts that the arrangement between Dr. Kim and NARMC provided for kickbacks and referrals that violated the Anti-Kickback Statute, 42 U.S.C. § § 1320a-7b, and the Stark Act, 42 U.S.C. § 1395nn. Plaintiff asserts that defendants violated and conspired to violate the FCA by submitting claims for payment and cost reports for reimbursement from federally funded health care programs, in which claims and reports defendants falsely certified that they were in compliance with the Anti-Kickback Statute and the Stark Law.

\* Plaintiff further asserts that, "upon information and belief," Dr. Kim submitted false claims for:

A. Continuing medical physics consultation.

B. Brachytherapy calculations.

C. Complex blocks.

D. Therapeutic radiology port films.

(Id. ¶ 24.)

\* According to plaintiff, she met with NARMC's President, Tim Hill, and its chief financial officer on April 12, 2002, and Hill "acknowledged that NARMC's provision of billing services to Dr. Kim was illegal under Medicare." (Id. ¶ 26.) Plaintiff alleges that Hill directed her to reduce the billing services provided by NARMC to Dr. Kim and plaintiff "warned [Hill] that Dr.

Kim would become angry." Plaintiff alleges that Dr. Kim "did become angry" and that, on May 30, 2002, NARMC informed plaintiff that she was being terminated because "Dr. Kim refused to work with her." (Id. ¶ ¶ 28, 31.) Plaintiff asserts that she was terminated in retaliation for her "investigation into the illegal financial and referral relationship between NARMC and [Dr. Kim]." (Id. ¶ 55.)

5. Defendants move to dismiss plaintiff's amended complaint, arguing, inter alia, that plaintiff has still failed to plead any violation of the FCA with particularity, as required by Rule 9(b), and that plaintiff has failed to state a claim for retaliation under the FCA.

**False Claims**

6. Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." In <u>United States ex. rel. Joshi v. St. Luke's Hosp., Inc.</u>, 441 F.3d 552 (8th Cir. 2006), the Eighth Circuit laid out the blackletter law on what Rule 9(b) requires a plaintiff to allege in an FCA case:

> Because the FCA is an anti-fraud statute, complaints alleging violations of the FCA must comply with Rule 9(b). Under Rule 9(b), the circumstances constituting fraud ... shall be stated with particularity. Rule 9(b)'s particularity requirement demands a higher degree of notice than that required for other claims, and is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations. To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and

-4-

content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result. Put another way, the complaint must identify the "who, what, where, when and how" of the alleged fraud.

Id. at 556.

7. The FCA relator in the above case, Dr. Joshi, alleged that St. Luke's Hospital had submitted false claims for Medicare and Medicaid reimbursement for anesthesia services performed by Dr. Bashiti, and alleged that Dr. Bashiti had conspired with St. Luke's in a scheme to defraud the government. The court found Dr. Joshi's allegations lacking in specificity:

> Dr. Joshi failed to allege with any specificity the particular circumstances constituting St. Luke's and Dr. Bashiti's alleged fraudulent conduct. Absent from the complaint are any mention of ... who was involved in the fraudulent billing aspect of the conspiracy, ... what services were provided and to which patients the services were provided, ... what the content was of the fraudulent claims, ... what dates the defendants allegedly submitted the false claims to the government, ... what monies were fraudulently obtained as a result of any transaction, or ... how Dr. Joshi, an anesthesiologist, learned of the alleged fraudulent claims and their submission for payment. Simply put, the complaint fails to identify specifically the "who, what, where, when, and how" of the alleged fraud.

Id.

The Eighth Circuit rejected Dr. Joshi's contention that he was claiming that every invoice submitted during the sixteen-year time period covered by his allegations was fraudulent, stating that "Rule 9(b) requires more than such conclusory and generalized allegations." Recognizing the impossibility of pleading the

-5-

specifics of every fraudulent transaction over a course of years, the court held:

> [N]either this court nor Rule 9(b) requires Dr. Joshi to allege specific details of *every* alleged fraudulent claim forming the basis of Dr. Joshi's complaint. However, to satisfy Rule 9(b)'s particularity requirement and to enable St. Luke's and Dr. Bashiti to respond specifically to Dr. Joshi's allegations, Dr. Joshi must provide *some* representative examples of their alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors.

Id. at 557 (emphasis in original).

8. A comparison of the amended complaint in the instant case to the complaint in Joshi reveals virtually the same pleading deficiencies. The amended complaint does not identify: (1) the particular individuals who are alleged to have made the decision to provide office space, staff, etc., to Dr. Kim for less than fair market value; (2) what the fair market value of these goods and services actually was and what Dr. Kim was charged; (3) the names of any of the patients Dr. Kim allegedly referred to NARMC in exchange for the provision of office space, staff, etc., at less than fair market value; (4) who was involved in submitting the fraudulent claims and cost reports; (5) what the content was of the fraudulent claims and cost reports; (6) what monies were fraudulently obtained as a result of the alleged illegal arrangement; or (7) how plaintiff learned of the alleged fraudulent claims and their submission for payment.

-6-

9.  As in <u>Joshi</u>, this Court recognizes that plaintiff's allegations concern an alleged scheme that spanned the course of twelve years and that plaintiff therefore cannot be expected to allege specific details of *every* alleged fraudulent claim forming the basis for her complaint.  However, as the Eighth Circuit held in <u>Joshi</u>, plaintiff must provide "*some* representative examples," specifying the time, place, and content of the fraudulent claims, as well as the identity of the actors.

In her amended complaint, plaintiff added the allegation that defendants "billed the United States for services provided to 'WT' from April 16, 1998 to October 28, 1998, at a time when they were falsely certifying that they were not in violation of the Medicare/Medicaid Anti-Kickback Statute and the Stark Law."  (Doc. 38 ¶ 22.)  Plaintiff also alleged that the bills for "WT" were false in other ways and identified four specific dates in 1998, when Dr. Kim provided services for "WT."  (<u>Id.</u> ¶ 23.)  These allegations do not provide "*some* representative examples" of the alleged fraudulent scheme, as they concern only one patient and are limited to a six-month period out of the twelve-year time period alleged in the amended complaint.  Further, while plaintiff identifies dates on which services were provided to "WT," she does not identify the dates defendants actually submitted the alleged false claims to the government, who was involved in submitting the

fraudulent claims, what the content was of the fraudulent claims, or what monies were fraudulently obtained.

10. As set out above, plaintiff also made very conclusory allegations that, "upon information and belief," Dr. Kim submitted false claims for continuing medical physics consultation, brachytherapy calculations, etc. These allegations fail to satisfy the pleading requirements of Rule 9(b), as plaintiff provides absolutely no specifics with regard to the "who, what, where, when, and how" of this alleged fraud. See Joshi, 441 F.3d at 556.

11. Plaintiff alleges that when NARMC terminated her, it refused to allow her to return to her office to collect documents that substantiated her allegations. Plaintiff contends that she therefore does not have access to the documents containing the requisite information regarding the specifics of the alleged fraudulent scheme. The Court sees no merit to this contention because, as defendants point out, the claims and cost reports at issue were allegedly submitted to the government and plaintiff has avenues for obtaining that information from the government. See United States ex. rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 229-30 (1st Cir. 2004); Peterson v. Community General Hosp., 2003 WL 262515, *2 (N.D. Ill. 2003).

12. Based on the foregoing, the Court concludes that plaintiff's allegations that defendants submitted and conspired to submit false claims to the United States lack the specificity

required by Rule 9(b).  As plaintiff has been previously granted leave to amend to cure this deficiency and as plaintiff does not seek further leave to amend, the Court finds that these claims are subject to dismissal.

The United States has filed a statement of interest, stating that its investigation of the facts at issue is ongoing and that any dismissal of plaintiff's claims should be without prejudice to the United States' right to pursue these claims in the future.

The most recent facts giving rise to the claims at issue occurred more than four years ago.  The United States offers no explanation as to why it has not yet concluded its investigation into these facts.  This action has been pending for nearly three years and the Court granted the United States three extensions of time in which to investigate and evaluate the claims at issue and elect to intervene.  The Court concludes that the United States has had ample opportunity to determine whether the claims at issue have merit and to elect to pursue them.  To dismiss these claims without prejudice at this juncture would be manifestly unfair to defendants.

Accordingly, the Court finds that plaintiff's claims that defendants submitted and conspired to submit false claims should be dismissed with prejudice.

**Retaliation**

13.  The FCA provides a cause of action to any employee who is terminated in retaliation for investigating, initiating, or assisting in an action to be filed to expose fraud against the government.  See 31 U.S.C. 3730(h).  To prevail on a FCA retaliation claim, a plaintiff must prove that (1) the plaintiff was engaged in conduct protected by the FCA; (2) the plaintiff's employer knew that the plaintiff engaged in the protected activity; (3) the employer retaliated against the plaintiff; and (4) the retaliation was motivated solely by the plaintiff's protected activity.  See Schuhardt v. Washington Univ., 390 F.3d 563, 566 (8th Cir. 2004).

14.  NARMC[1] argues that plaintiff's retaliation claim fails because, among other things, plaintiff's allegations do not establish that NARMC had knowledge that plaintiff was engaging in protected activity under the FCA or that plaintiff's termination was motivated by plaintiff's protected activity.  The Court agrees.

15.  To meet the knowledge element of her FCA retaliation claim, plaintiff must show that NARMC knew that she was investigating NARMC's alleged false claims for payment from the government.  Plaintiff alleges that when she met with President Hill on April 12, 2002, he "acknowledged that NARMC's provision of

---

[1] Plaintiff's retaliation claim is against NARMC only and not against Dr. Kim.

billing services to Dr. Kim was illegal under Medicare." (Doc. 38 ¶ 26.) Plaintiff alleges that based on this discussion, NARMC "knew there was a distinct possibility that [plaintiff] was contemplating a suit against NARMC and Dr. Kim." (Id. ¶ 54.)

Plaintiff's discussion with President Hill and Hill's acknowledgment that the provision of billing services to Dr. Kim was illegal might indicate NARMC had knowledge that plaintiff was investigating the legality of NARMC's arrangement with Dr. Kim under the Anti-Kickback Statute and the Stark Law. However, it cannot be inferred from this that NARMC had knowledge that plaintiff was investigating the submission of claims which were allegedly false because they certified compliance with the Anti-Kickback Statute and the Stark Law. Plaintiff has therefore failed to allege facts sufficient to meet the knowledge element of her retaliation claim.

16. With regard to the motivating factor--or causation element--of her claim, plaintiff alleges that NARMC terminated her because "of her investigation into the illegal financial and referral relationship between NARMC and [Dr. Kim]." (Id. ¶ 55.) Plaintiff explains that after she discussed the legality of this arrangement with Hill, Hill instructed plaintiff to reduce the provision of services to Dr. Kim. According to plaintiff, Dr. Kim became angry over this and refused to work with plaintiff, resulting in plaintiff's termination by NARMC. These allegations

indicate that plaintiff was terminated for questioning and, in Dr. Kim's eyes, interfering with NARMC's arrangement with Dr. Kim. It cannot be inferred from these allegations that plaintiff's termination was motivated in any way by the investigation of false claims; indeed, there is not any mention of false claims in these allegations. Thus, plaintiff has failed to allege facts sufficient to support the motivating factor element of her retaliation claim.

17. As plaintiff has failed to allege facts sufficient to support the elements of her FCA retaliation claim, the claim is subject to dismissal.

## Conclusion

18. Based on the foregoing, defendants' Motions to Dismiss (Docs. 42, 44) are hereby **GRANTED** and plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

> /S/JIMM LARRY HENDREN
> JIMM LARRY HENDREN
> UNITED STATES DISTRICT JUDGE